Argued April 8, affirmed June 16, 1925.

## CROWELL ELEVATOR COMPANY v. KERR GIFFORD & CO., INC.

(236 Pac. 1047.)

**Contracts—Circumstances Surrounding Formation of Contract are Admissible.**

1. Circumstances surrounding formation of a contract are always admissible in evidence.

**Appeal and Error—Right of Appeal is Statutory.**

2. Right of appeal in judicial proceedings is statutory.

**Contracts—Contract for Submission of Differences Between Members of Grain Association Construed—"Final."**

3. Contract between members of a grain association providing that contracting parties should submit their differences to a committee of association, and that they would abide by its decision, which should be final, and that compliance with award should be in accordance with rules of association applicable thereto, when construed in light of Sections 715, 717, 718, Or. L., *held* not to show an intention to arbitrate differences between contracting parties in accordance with rules of association, but that decision of committee should be final in that no appeal could be taken therefrom, there being no analogy between "final" as used in contract, and as applied to final orders from which an appeal under statute may be taken in judicial proceedings.

**Contracts—Complaint Held not to Allege an Agreement to Resubmit Controversy to Appeals Committee.**

4. In action to enforce payment of an alleged arbitration award, under contract by which parties agreed to abide by committee's decision, which should be final, complaint *held* not to allege an agreement to resubmit controversy to appeals committee on an appeal from original committee, and hence action could not be maintained on award of appeals committee.

**Arbitration and Award—Burden of Proving Submission is on Party Claiming it—Submission must be Alleged.**

5. Burden of proving submission of controversy to arbitration is on party claiming it, and before plaintiff can prove it he must allege it.

1. See 6 R. C. L. 849.
2. See 2 R. C. L. 29.
3. Agreements to submit to arbitration, see notes in 14 Am. Dec. 296; 2 Am. St. Rep. 566. See, also, 2 R. C. L. 365.
4. See 2 R. C. L. 386.

Arbitration and Award—Antecedent Agreement to Submit to Arbitration may be Inferred from Disputant's Participation in Proceedings.

6.  Where there has been but one submission of controversy to arbitration and that by parol, antecedent agreement by party to submit controversy to arbitration may be inferred from his participatio . in arbitration proceedings.

See (1) 13 C. J. 542.    (2) 3 C. J. 316.    (3) 13 C. J. 680.    (4) 13 C. J. 716.    (5) 5 C. J. 218, 224.    (6) 5 C. J. 224.

From Multnomah: GEORGE W. STAPLETON, Judge.

Department 1.

AFFIRMED.

For appellant there was a brief over the name of *Messrs. Dey, Hampson & Nelson* and *Mr. C. J. Young,* with an oral argument by *Mr. Young.*

For respondent there was a brief over the name of *Messrs. Angell, Fisher & Sabin,* with an oral argument by *Mr. Homer D. Angell.*

RAND, J.—This is an action to enforce payment of an alleged arbitration award. From the allegations of the complaint, to which a general demurrer was sustained in the court below, it appears that there was a dispute between plaintiff and defendant, who were each members of the Grain Dealers' National Association, as to whether defendant was liable to plaintiff upon a claim growing out of an alleged sale of corn of which it was claimed the defendant had wrongfully refused to accept delivery. To settle this dispute they entered into a written contract agreeing to submit the matter to the committee on arbitration of the Grain Dealers' National Association for its arbitration and award in writing.

6.  Validity of parol submission to arbitration, see note in Ann. Cas. 1913D, 199.  See, also, 2 R. C. L. 398.

This contract is set forth at length in the complaint, and so far as deemed material, is as follows:

"For the purpose of avoiding litigation and in consideration of saving time and expense * * I hereby agree to submit to the Committee on Arbitration of the Grain Dealers' National Association for its decision and award in writing, * *

"All matters in dispute between Kerr Gifford & Company, Inc., of Seattle, Wash., and the Crowell Elevator Company, of Omaha, Nebr.

"I further agree that I will abide by and comply with the decision of the said committee and that its decision shall be final.

" * * That in case any member of the regularly constituted committee cannot take part in the hearing of this case, the President or Secretary of the Association may appoint another member of the Association to so act and in that event all the terms of this agreement shall be as binding on me as though all the members of the regular committee had taken part in the hearing of this case, and that the compliance by me with the award shall be in accordance with the rules of the Association applicable thereto."

That pursuant thereto the matter in dispute was submitted for arbitration and award to the committee named in the contract, and that committee made a written award completely exonerating the defendant from any liability to plaintiff.

The complaint alleges that the by-laws of the association provide that "the committees on arbitration shall each consist of three members. It shall be the duty of these committees to consider and determine all cases referred to them and to render such decisions thereon as may, in their judgment, be just and equitable and·in accord with the rules adopted by the association." And also that the by-laws provide that "The Committee on Arbitration Appeals shall consist of five selected from the members of the

Board of Directors. It shall be the duty of this committee to consider and determine all appeals from decisions of the Arbitration Committees, and the decisions of the Committee on Arbitration Appeals shall be final.''

That the arbitration rules of the Grain Dealers' National Association, in part, provide as follows: ''Decisions of a national committee shall be final unless excepted to by either party, when the case may be reviewed by a board of appeals and affirmed, amended, reversed, and rendered or remanded for rehearing.''

Plaintiff, who was unsuccessful before the committee named in the contract, appealed from that award to the committee on arbitration appeals of the Grain Dealers' National Association, which latter committee reversed the former award and made an award in favor of plaintiff requiring the defendant to pay plaintiff the amount which plaintiff seeks to recover in this action. The allegation of the complaint is ''that after the committee on arbitration entered said award of April 29, 1921, in favor of the defendant, plaintiff, pursuant to said provisions of the bylaws and arbitration rules of said Grain Dealers' National Association, excepted to said decision and appealed therefrom to the appeals committee of Grain Dealers' National Association; that defendant participated in the appeal and said decision was reviewed by the appeals committee, the disputed matters being presented to the committee by plaintiff and defendant, respectively; that thereafter, to wit, on the seventh day of October, 1921, the appeals committee, by its written decision and award, reversed the decision of the lower committee and ordered defendant herein to pay to plaintiff the sum of $1,187.86 and costs of arbitration.''

Plaintiff's brief states that the demurrer to the complaint raises two issues. First, by reason of the written agreement entered into by plaintiff and defendant, was the original award final in the sense that no appeal could be taken therefrom? Second, did the appeal by plaintiff, participated in by defendant without the latter's protest, constitute an abrogation of the original contract for arbitration and a new submission of the case to the appeals committee? These will be considered in their order.

In support of its first contention that the original award was not final in the sense that no appeal could be taken therefrom, plaintiff relies upon the well-recognized rule that "a written contract must be examined, not alone by the words and phrases found within its four corners, but it is to be construed from the standpoint of the parties who made the contract. Their relations to the contract and all the surrounding facts and circumstances are to be considered." The statute, Section 717, Or. L., provides that "for the proper construction of an instrument," such as the contract involved here, "the circumstances under which it was made, including the situation of the subject of the instrument, and of the parties to it, may also be shown, so that the judge be placed in the position of those whose language he is to interpret." Of equal force and equally applicable here are two other statutory rules, namely, "In the construction of a statute or instrument the office of the judge is simply to ascertain and declare what is, in terms or in substance, contained therein, not to insert what has been omitted, or to omit what has been inserted." (Section 715, Or. L.) "The terms of a writing are presumed to have been used in their primary and general acceptation, but evidence is nevertheless admissible that they have a technical, local, or other-

wise peculiar signification and were so used and understood in the particular instance, in which case the agreement shall be construed accordingly." (Section 718, Or. L.)

1. The circumstances surrounding the formation of a contract are always admissible in evidence; but, as said by Mr. Williston, "It must be kept in mind, however, that the only purpose for which such evidence is ever admissible in an action on the contract, is to interpret the writing. So far as the evidence tends to show not the meaning of the writing but an intention wholly unexpressed in the writing, it is irrelevant." 2 Williston on Contracts, § 629.

The only circumstances surrounding the making of the contract which are alleged in the complaint are these: Plaintiff and defendant were each members of the Grain Dealers' National Association; that association, by its by-laws and arbitration rules, had adopted a full, complete and adequate method by which disputes arising from transactions between its own members could be submitted for arbitration to standing committees which had been selected and appointed by the association itself.

If, when entering into the contract to submit the matter to arbitration, the contracting parties had no knowledge of the provisions of these by-laws and arbitration rules, they could not have contracted in reference to them. There is no allegation that they did have such knowledge, but since they were common members of the association and were contracting to submit their dispute to one of the committees named in the by-laws and entered into a contract which provided "that the compliance by me with the award shall be in accordance with the rules of the Association applicable thereto," presumably they did know of the method which had been provided

for the settlement by arbitration of disputes between members of the association. Assuming, therefore, that they had such knowledge, and applying to the contract the construction required by the sections of the statute above referred to, not for the purpose of finding an intention wholly unexpressed in the writing which, under the statute and the rule stated by Mr. Williston, would be improper, but for the purpose of interpreting what is, in terms or in substance, contained in the writing, there is nothing in the contract to show an intention to arbitrate the difference between the contracting parties in accordance with the by-laws and arbitration rules of the association, or in any other manner, except before the one committee named in the contract, whose award the contract provided should be final. The fact that plaintiff and defendant were common members of the association, and that a method of arbitration had been provided by the association, is of no importance unless plaintiff and defendant desired to avail themselves of that method, for neither the association nor any member of it could compel another member, without his consent, to submit a matter of dispute to arbitration. "A submission to arbitration is a contract and must have all the elements necessary to a contract, of which a fundamental requirement is that the minds of the parties must have met in an agreement to do a specific thing." 5 C. J., p. 23, § 15.

Since but one contract was entered into and that contract was in writing, the question of whether the parties contracted to submit the matter, first, to one committee, and then, upon appeal, to another committee, depends upon the written language which the parties used in formulating their contract and not upon what they might have done had they desired to contract to do something else. Hence, assuming that

they knew that they could, if they desired to do so, contract to submit their difference to arbitration in accordance with the by-laws and rules of the association, or to use one of its committees only to arbitrate their difference, they stipulated to submit to one of the committees of the association the matters in dispute, and agreed to abide by and comply with the decision of the said committee, and that its decision shall be final.

The language of the contract is not to submit the matter in dispute to the association itself or to more than one committee, but to submit the matter to one particularly named committee and that its decision shall be final. There is no provision in the contract for an appeal, or that if either party is dissatisfied with the decision of the committee named in the contract, it may except to the award of that committee and appeal to another committee. The language of the contract excludes an appeal by either party from the award of the committee named in the contract, and there is nothing in the surrounding circumstances from which any language used in the contract can be interpreted to arrive at that meaning. The award of the first committee could not be final and the parties could not comply with it if, upon appeal and by a different committee, an entirely different award could be made. In such case, the second award would not be the award of the committee named, and a compliance with it would not be a compliance with the award of the committee named in the contract. Before plaintiff's contention could be sustained, it would be necessary to insert into the contract terms which the parties themselves have not used, and to give to the contract a meaning which could only result from the making of a new contract for them.

2. Plaintiff seeks to trace an analogy between the word "final," as used in the contract, and the word "final" as applied to final orders from which an appeal under the statute may be taken in judicial proceedings, but there is no such analogy. The right of appeal in judicial proceedings is a creature of the statute, and unless the statute confers the right it does not exist. The right of the plaintiff to appeal from the award of the committee named in the contract does not exist unless the contract so provides. As used in the appeal statute, the word "final" refers only to the proceedings in the court from which the appeal is taken, and the statute intends that an appeal shall not be taken until the matter at issue has been finally disposed of or some final order has been made in the lower court, the effect of which is to determine the action or suit so as to prevent a judgment or decree therein.

As so used in the statute the word "final" means final only to the extent that the action or suit is finally disposed of by the lower court before the appeal can be taken. This contract provides that the contracting parties shall submit their differences to "the committee on arbitration of the Grain Dealers' National Association for its decision and award in writing," and that they "will abide by and comply with the decision of the said committee, and that its decision shall be final."

3. The particular committee referred to in the contract made its award in favor of the defendant, and this award the contracting parties stipulated should be final. There is no agreement that either party could appeal therefrom, or that the award should not be final if appealed from, and such an intention cannot be found in the contract without first adding terms not contained in it. The award which plaintiff

seeks to enforce is not the award provided for in the contract, but an award of another committee to which neither party agreed submission might be made. To give effect to this latter award would be to abrogate the contract which the parties made and to subject them to the payment of an award made by a wholly unauthorized committee. As was said by the court in *Bailey* v. *Triplett,* 83 W. Va. 169 (98 S. E. 166, 169), "The agreement of submission entered into by the parties is the authority for the arbitrators and the umpire to act. Without that, anything they do is entirely without authority. It is their charter of authority."

The last clause of the contract which recites "That the compliance by me with the award shall be in accordance with the rules of the Association applicable thereto," refers wholly and alone to the award when made and not to the manner or method by which it is to be made, or to the parties by whom it is to be made. If the language of this clause had any special signification the complaint does not so allege, nor does it allege what rules, if any, the association had that were applicable thereto.

4. Upon the second point counsel for plaintiff presented this question: Did the appeal by plaintiff, participated in by defendant without the latter's protest, constitute an abrogation of the original contract for arbitration and a new submission of the case to the appeals committee? The allegation of the complaint is that the defendant participated in the appeal and presented to the committee the disputed matters. There is no allegation that it did so without protest, nor is there any allegation that the original contract for arbitration has ever been abrogated or that plaintiff ever assented to a new submission of the matter to the appeals committee. The allegation that de-

fendant participated in the appeal and presented the disputed matters to the committee on arbitration appeals is more a statement of a conclusion than a statement of the ultimate facts. If, as we have held, the committee on arbitration under this contract was to be the sole arbitrator, then its award could not be vacated without the mutual consent of both parties, and there could be no resubmission of the matter to another committee, unless a contract stipulating to do so was first entered into by plaintiff and defendant. If there was such a contract the complaint fails to allege it.

5. The burden of proving the submission is on the party claiming that there was a submission, and before plaintiff can be in position to prove it, it must allege it. For the purpose of this demurrer the sufficiency of the complaint depends upon whether, under the allegations of the complaint, proof would be admissible to establish a resubmission to the appeals committee upon an appeal from the original committee. Since a submission to arbitration is a contract and must have all the elements necessary to a contract, the parties must have agreed to vacate the first award and to resubmit the matter to the appeals committee before that committee would have any authority to act, or before its award could have any validity.

The whole theory of the complaint is that there was but one contract, and that that contract was sufficiently comprehensive in its terms to authorize the taking of an appeal and a resubmission, and the making of a second award, and upon that theory the sufficiency of the complaint must be determined. Says Mr. Greenleaf, "If the submission was by parol, it is material to prove not only that both parties promised to abide by the award, but that the prom-

ises were concurrent and mutual, for otherwise each promise is but *nudum pactum*."

6. Where there has been but one submission and that by parol, the antecedent agreement of a party to submit the matter in dispute to arbitration may be inferred from his participation in the arbitration proceedings: *Lobb* v. *Lobb*, 26 Pa. 327. But here the reason for drawing such an inference fails because the contract, and the only contract according to the complaint was in writing and provided for but one submission, which submission, the complaint alleges, was made and resulted in an award in favor of defendant.

At the time that the proceedings were had there was no provision by statute for arbitration in this state; hence the rules of the common law obtain. In passing upon this demurrer in the Circuit Court, the late Honorable GEORGE W. STAPLETON, who for many years has been an ornament to the bench and bar of the state, filed with his decision a written opinion from which we adopt the following as a correct statement of the law of the case:

"The contract reads: 'I hereby submit to the Committee on Arbitration.' This is the committee provided for by Article 2, Section 8 of the by-laws. There is no other committee by that name created by the by-laws, and further the contract reads 'for its decision.' The word 'its'· is singular and refers to the Committee, the Committee on Arbitration; and again 'I further agree that I will abide by and comply with the decision of said Committee,' and 'its decision shall be final.' The words 'said committee' refer to the committee named in the contract. It does not name any other committee or other committees. The words 'said committee' and 'its decision' refer directly at all times to the committee named in the contract of submission, to-wit, 'Committee on Arbitration,' not 'Committee on Arbitration Ap-

peals.' The words 'Its decision shall be final' permits the inquiry: Whose decision shall be final? Most certainly the decision of the committee named in the contract and it is referred to by the words 'its' and 'said committee.' That is the Committee on Arbitration; that is the only committee named in the contract, and these words of finality could not have been intended to refer to the committee on Arbitration Appeals, by the use of the words 'said' and 'its' in its reference to the committee, whose decision should be made final by the agreement.

"The by-law, Section 6, Article 4, provides that the decision of the Committee on Arbitration shall be final unless excepted to. The words of the contract, therefore, must have been intended to have some meaning, to serve some definite purpose. The decision of the Committee on Arbitration Appeals is made final by the by-laws. If, therefore, they expected to carry the case through both courts and did not expect to make the decision of the first committee final, why use the word 'final' as applying to the Committee on Appeals? The by-law made that final; no further words were necessary where a submission was agreed upon. The words used 'shall be final' can only be made useful by applying them to the decision of the Committee on Arbitration, whose decision was final only when not appealed from, and these words were used as a method of waiver of the right of appeal from such decision; otherwise these words are meaningless, mere surplusage. In construing contracts, such a construction should be adopted, if possible, as will give meaning and force to every word and expression used.

"The last words of the contract refer only to the method of submission (enforcement) after the award has been made, and has no reference to any rule leading up to the procuring of an award. The requirements of compliance with an award would be the same, or should be the same on final award from the Committee of Arbitration as from a final award by the Committee on Arbitration Appeals. It may be that the use of these terms here were made to remove

any question of compliance with rules or the application of rules to a stipulated final judgment from the first Committee; if so, that is but one additional evidence of the intent to make this decision final.''

For the reasons stated, the judgment appealed from is affirmed.            AFFIRMED.

MCBRIDE, C. J., and COSHOW and BURNETT, JJ., concur.