Argued October 12; reversed November 15, 1949

# RAYBURN ET UX. *v.* CRAWFORD ET UX. AND FIRST NATIONAL BANK OF EUGENE

### 211 P. 2d 483

*L. L. Ray*, of Eugene, argued the cause for appellants. On the brief was H. E. Slattery, of Eugene, since deceased.

*Frank B. Reid*, of Eugene, argued the cause for respondents. On the brief were Reid & Bartle, of Eugene.

Before LUSK, Chief Justice, and BRAND, ROSSMAN, BAILEY and HAY, Justices.

HAY, J.

On March 1, 1946, the plaintiffs, Wilbur L. Rayburn and Iva B. Rayburn, husband and wife, sold to the defendants Roy M. Crawford and Stella May Crawford, husband and wife, a tract of land comprising some 1,200 acres in Lane County, Oregon. The agreed price was $36,000, of which $21,000 was credited as a down payment and the remainder was made payable at the rate of $1,000 a year, with interest. A contract of sale was executed by the parties. We shall refer to this as "the land contract". A copy thereof, together with two warranty deeds, each deed covering a separate portion of the premises, was placed in escrow with the defendant First National Bank of Eugene, the deeds to be delivered to the Crawfords upon full payment of the purchase price. By actual agreement of the parties, the vendors reserved the merchantable saw-timber standing upon a portion of the premises, but, by a scrivener's error, such reservation was not embodied either in the land contract or in the appropriate deed.

On the same day, and practically simultaneously with the signing of the land contract, the parties executed another agreement in writing, whereby the Rayburns agreed to sell and the Crawfords to purchase the merchantable saw-timber reserved from the sale of said land. We shall call this "the timber contract". The agreed price was to be at the rate of $2.75 per

thousand feet, payable by installments, on the first and sixteenth days of each month, as the timber should be manufactured into lumber. The Crawfords agreed either to sell the logs to a sawmill or sawmills, or to erect their own sawmill upon the land and mill the timber themselves. If they sold to a sawmill or sawmills, they agreed to authorize and require the buyers to make payment direct to the Rayburns, at $2.75 per thousand feet, by installments, as the lumber was milled. If the Crawfords should mill the timber themselves, they agreed to authorize and require the lumber broker or brokers, who should purchase the lumber from them, to withhold the purchase price of the timber, at the agreed rate, for the Rayburns' account.

For the purpose of the case, we set forth the following portions of the timber contract in full:

"3. It is further agreed that the second parties will begin the logging operation contemplated by this agreement on or about May 6, 1946, and that they will conduct a continuous logging operation on said premises thereafter until all of the merchantable saw logs have been removed from said premises; and that all of said saw logs will be removed on or before March 15, 1947. With the understanding, however, that should the second parties be unable to remove said saw logs from said property due to strikes, shutdowns, lock-outs, or other conditions beyond their control, on the part of the parties to whom said saw logs or lumber is being sold, that in such event second parties shall have an additional period of one year in which to complete said contract.

"* * *

"9. It is further understood and agreed that time is the essence of this agreement and that upon the failure of the parties of the second part to comply with any of the terms and conditions of this

agreement, * * * the first parties shall have the right to cancel this contract and to declare the same of no force or effect, without further notice, * * * "

On February 17, 1947, the Rayburns served upon the Crawfords written notice of cancellation of the timber contract.

This suit was instituted by the Rayburns, as plaintiffs, for the purpose of procuring a reformation of the land contract and deed, so as to include therein the timber reservation, and for an injunction against the Crawfords, to prevent them from interfering with the removal of the reserved timber by the Rayburns. The amended complaint recited the facts which we have outlined above, and exhibited copies of the land and timber contracts. By an amended answer, the Crawfords, as defendants, while admitting execution of the contracts and deeds, made general denial of the amended complaint in all other respects. Affirmatively, they alleged that, prior to the signing of the timber contract, the Rayburns represented to them that the merchantable saw-timber on the premises could be readily sold at a substantial profit to sawmill and logging operators within the area; that they, the Crawfords, had no knowledge of timber and logging, which fact was known to the Rayburns, and the Rayburns also knew that the Crawfords would be obliged to sell the logs and timber to sawmill operators for manufacture; that the Crawfords were unable to find a purchaser for the timber until the month of ———————, 1946; that, on February 17, [1947], the Rayburns wrote the Crawfords that they were cancelling the timber contract, and refused to permit the Crawfords "to proceed further with the removal of

the timber''; that the Crawfords "now have, and have had for some time, a ready sale for said merchantable timber at around $5.00 per thousand board feet, and that if the Court would grant a seven-month extension of time to remove the same from March 15, 1948,'' the Crawfords would be able to complete the contract for the purchase of said timber; that their failure to cut and remove the timber within the time limited by the timber contract ''was due to conditions beyond their control, and for the past year, has been due to the wrongful acts of the plaintiffs''; that, because of such conditions and of such wrongful acts, the Crawfords, in equity and good conscience, ought to be granted an extension of time to and including October 15, 1948, within which to complete performance of the timber contract. These allegations of new matter were put at issue by the reply.

After a hearing, the trial court held that the Crawfords were prevented from completing the timber contract by conditions beyond their control, and that, by the terms of the contract, they were entitled to an extension of time to complete performance thereof. The court allowed an extension of four months for that purpose. It refused to reform either the land contract or the deed. A decree was entered accordingly, and the Rayburns have appealed therefrom to this court.

■ Error is assigned upon the refusal of the court to reform the land contract and deed. The evidence shows beyond the slightest doubt that all the parties understood that the timber was reserved from the sale of the land. No question of fraud, bad faith, or inequitable conduct on the part of the Rayburns is involved. Reformation of the land contract and deed will not adversely

affect any interest of the Crawfords in the premises which should be held immune. *Wolfgang v. Henry Thiele Catering Co.*, 128 Or. 433, 447, 454, 275 P. 33. It having been conceded that the timber was reserved from the sale, and the reservation having been omitted from the written contract and deed solely by reason of mistake on the part of the scrivener, the plaintiffs were entitled to have the instruments reformed. *De Tweede v. Barnett Estate*, 160 Or. 406, 411, 414, 85 P. 2d 361; 45 Am. Jur., Reformation of Instruments, sections 54, 55. In our opinion, the refusal of the court to grant reformation was error.

■ Time was expressly made of the essence of the timber contract. That sort of express stipulation is binding upon the parties to the contract, both at law and in equity. 55 Am. Jur., Vendor and Purchaser, section 111; *Williams v. Barbee*, 165 Or. 260, 273, 106 P. 2d 1033.

■ The timber contract had the effect of vesting present title in the Crawfords to all the merchantable saw-timber, but upon condition that such title was liable to be defeated by their failure to remove the timber from the land within the time limited. *Anderson v. Miami Lbr. Co.*, 59 Or. 149, 151, 116 P. 1056; *Coquille M. & T. Co. v. Robert Dollar Co.*, 132 Or. 453, 469, 285 P. 244; *Sandy Holding Co. v. Ferro*, 144 Or. 466, 475, 25 P. 2d 561.

■■ In the affirmative answer, the defendants, as their excuse for not having cut and removed the timber within the time limited, and as their reason for being entitled to an extension of time for that purpose, pleaded as follows: ''That the failure of the defendants to commence logging operations as provided in said contract, and to complete the same, was due to con-

ditions beyond their control, and for the past year, has been due to the wrongful acts of the plaintiffs, * * *." It is contended that this was but the pleading of a conclusion, which raised no issue. That is true, but in this case no objection to the pleading, either by motion or demurrer, was made, and, on the hearing, evidence was received, without objection, in support of the pleaded conclusion and in proof of the facts which should have been pleaded in place thereof. Under such circumstances, we hold that such proof had the effect of curing the defective pleading. *Winters v. Privett,* 86 Or. 501, 505, 168 P. 942; *Pearson v. Richards et al.,* 106 Or. 78, 85, 211 P. 167; 41 Am. Jur., Pleading, sections 16, 68.

It is argued that the extension of time granted to the Crawfords was something to which they were entitled by operation of law, and, in particular, that a reasonable time after the time specified should be given where removal of the timber is interfered with by act of God, act of the vendor, or some unforeseen casualty or misfortune over which the purchaser had no control. 34 Am. Jur., Logs and Timber, section 36; Anno., 15 A. L. R. 93, 31 A. L. R. 951, 71 A. L. R. 157, 164 A. L. R. 440.

It is not suggested that removal of the timber was interfered with by a happening coming within any legal definition of act of God. Bouvier, L. D., 3d Rev., 116.

■ The acts of the vendors upon which the Crawfords rely are that they "failed to cooperate in any way in the sale of the timber". As to this, the contract did not require them to assist the Crawfords in selling the timber, but, even if it had, there is no evidence that they failed to do so. On the contrary, the evidence is that Mr. Rayburn made considerable personal efforts

to bring the timber to the attention of possible purchasers. There was no evidence whatever that the failure of the Crawfords to remove the timber was in any respect due to any act of the Rayburns.

It remains to be considered whether or not the extension of time awarded by the lower court was justified by reason of the intervention of some unforeseeable casualty or misfortune from the results of which the Crawfords are entitled to relief in equity.

██ We are of the opinion that that part of the timber contract which provides for an extension of time for removal of the timber is ambiguous. It allowed an extension of time in the event that the Crawfords were unable to remove the timber "due to strikes, shutdowns, lock-outs, or other conditions beyond their control, on the part of the parties to whom said saw logs or lumber is being sold." It may be read to mean either conditions beyond the control of the Crawfords or conditions beyond the control of persons to whom the Crawfords should sell the sawlogs or lumber. The ambiguity may be resolved by taking into consideration the circumstances under which the contract was made, including the situation of the subject of the contract and of the parties to it. Section 2-218, O. C. L. A.; *Crowell Elevator Co. v. Kerr Gifford & Co.*, 114 Or. 675, 680, 236 P. 1047; *Dolph v. Speckart*, 94 Or. 550, 564, 179 P. 657, 186 P. 32; 17 C. J. S., Contracts, section 321. The Crawfords pleaded in their answer, and offered evidence to prove, that they had no knowledge of timber or of logging, which fact was known to the Rayburns; that, during the preliminary negotiations, the Rayburns represented to them that the merchantable timber on the premises "could be readily sold to sawmill and logging operators within the area at a

substantial profit''; and that the Rayburns knew that the Crawfords would have to sell the logs and timber to existing operators. In view of these circumstances, and imputing a reasonable meaning to the language employed by the parties (*Mendelsohn v. Mendelsohn*, 104 Or. 281, 286, 207 P. 158), we think that they meant that the Crawfords would be entitled to an extension of time in the event that their removal of the timber should be interfered with by strikes, shutdowns, lockouts, or other conditions beyond the control of the Crawfords, affecting persons to whom they might sell the sawlogs for manufacture into lumber, or (in the event that the Crawfords should mill the logs themselves) affecting the persons to whom they might sell the lumber.

The condition beyond their control upon which the Crawfords rest their case is the fact, of which the lower court took judicial notice, that, during the time within which the timber was to be cut and removed according to the contract, there was an extreme shortage of railroad cars upon the railroad serving the area in which the timber lands are situated, which condition caused prospective buyers of the logs or lumber to refrain from buying, and, hence, prevented the Crawfords from selling.

In an agreement, if there are both general and special provisions relating to the same thing, the special provisions control. ''The rule is usually applicable that where no intention to the contrary appears, general words used after specific terms are to be confined to things ejusdem generis with the things previously specified.'' 12 Am. Jur., Contracts, section 244; *Swift & Company v. Columbia Railway, Gas & Electric Company*, C. C. A. 4th, 17 F. 2d 46, 51 A. L. R.

983, 988; Anno., 51 A. L. R. 995. Applying the rule to the extension clause under consideration, it is apparent that the expression "other conditions beyond their control" must be construed, in analogy to the particular terms to which it is appended, as having reference to some form of labor trouble. The Rayburns are charged with having represented to the Crawfords that the timber could be sold readily at a substantial profit to sawmill and logging operators within the area. Assuming, without deciding, that this was more than a mere expression of opinion (*Horner v. Wagy*, 173 Or. 441, 455, 146 P. 2d 92), it does not appear that it was not true. The car shortage, apparently, was the chief obstacle to a sale within the time limited. The Rayburns were not responsible for the car shortage, nor did they make any representation as to the availability of cars. The shortage was a contingency which, as commented by Mr. Justice Lusk, in respect of a similar contretemps, in *Williams v. Barbee*, supra (165 Or. 260, 275, 106 P. 2d 1033), "could have been foreseen and guarded against in the contract". See also *Coquille Mill & Tug Co. v. Robert Dollar Co.*, supra (132 Or. 453, 469, 285 P. 244); *Hanthorn v. Quinn*, 42 Or. 1, 13, 69 P. 817.

Moreover, there was evidence on the part of the Crawfords themselves which tended to prove that car shortage was not the only reason why sawmill operators were not interested in buying this timber. On cross-examination, Mr. Crawford was asked: "Well, now, was there any other objection [than shortage of cars] that the purchasers raised to the timber at that time that made it more difficult to sell?" He answered: "Well, that it would be expensive to take out. It was scattered over a lot of territory and wasn't perfectly

first class timber." Mrs. Crawford, in response to a similar question, said: "Yes, I heard different ones who were working at it. The Cresswell Lumber man, I heard him discuss it with Mr. Crawford, and also Mr. Holt and the Puget Sound. We went to the Puget Sound place several times thinking they would take it, and the main argument was car shortage, and then again they said it was scattered and too expensive to take off and they could get better timber and easier to get it out without having to wait just for the summer show."

The Crawfords complain that the Rayburns gave them notice of cancellation of the contract on February 17, 1947, or about a month before the time for removing the sawlogs had elapsed. But this fact cannot help them in any respect. The evidence was that it was impossible to carry on logging operations on the land during the winter months. They had not cut any timber up to the time when they received notice of cancellation of the contract, and it would have been impossible for them to have done any logging in the short time available to them thereafter.

The short period allowed by the contract for the removal of the timber imposed a condition of some harshness upon the Crawfords, but the evidence is that they themselves fixed the time. At all events, they accepted the contract with the time limitation and the time-essence stipulation as parts of it. The mere fact that those provisions made their case hard is not sufficient reason for the court to undertake to relieve them of the obligations of their contract. *Pacific Finance Corporation v. Ellithorpe*, 134 Or. 601, 608, 280 P. 658, 289 P. 1058; *O. R. & N. Co. v. McDonald*, 58 Or. 228, 235, 236, 112 P. 413; 3 Williston on Contracts, Rev. Ed., sec-

tion 769, p. 2170; 17 C. J. S., Contracts, section 296, p. 702. It is true that equity will not lend its aid to enforce a forfeiture, but this suit was not brought to enforce a forfeiture. The title of the Crawfords to the timber had been extinguished, by the election of the Rayburns to rescind the contract, in accordance with its terms, before this suit was instituted. *Williams v. Barbee,* supra (165 Or. 260, 273, 282, 106 P. 2d 1033). In our opinion, the court erred in granting an extension of time to the Crawfords.

As the Crawfords have refused to allow the Rayburns to enter upon the land for the purpose of removing the timber, we think that the latter are entitled to an injunction to protect them in the reasonable enjoyment and exercise of their property rights in the premises. 19 Am. Jur., Equity, section 146; 28 Am. Jur., Injunctions, section 70, text and note 6.

We are of the opinion that the reservation of the merchantable timber in this case was a reservation only of that timber upon the land which was merchantable at the date of the execution of the contract. *Parsons v. Boggie,* 139 Or. 469, 471, 11 P. 2d 280. The law will not presume that the parties intended that the Rayburns should have an unlimited time for removal of the timber. *Coquille M. & T. Co. v. Robert Dollar Co.,* supra (132 Or. 453, 466, 285 P. 244). Under the circumstances, we hold that the contract requires the Rayburns to remove the timber within a reasonable time. *Parsons v. Boggie,* supra (at page 472). The injunctive relief to which the plaintiffs are entitled, therefore, should be limited in operation to a reasonable period of time.

"* * * What is a reasonable time depends upon circumstances such as the quantity of timber,

the character of it, facilities for marketing it, and all other facts and circumstances showing the conditions surrounding the parties at the time of the execution of the contract. In case of dispute, this becomes a question of fact for the determination of the court or of the jury trying the case. * * * "

*Union Sawmill Co. v. Agerton,* 181 Ark. 144, 25 S. W. 2d 13, 14. See also *Parsons v. Boggie,* supra (p. 471).

The decree appealed from will be reversed. The land contract between the parties and the warranty deed in escrow conveying the timbered lands will be reformed, so as to reserve to the plaintiffs, Wilbur L. Rayburn and Iva B. Rayburn, husband and wife, the merchantable saw-timber covered by the timber contract. The cause is remanded to the circuit court to determine what is a reasonable time to be allowed plaintiffs within which to remove said merchantable timber, to allow them such time, and to enjoin the defendants Roy M. Crawford and Stella May Crawford, and each of them, from in any manner interfering with the plaintiffs, during the time so allowed, in their enjoyment and exercise of their right of removal of said timber.

It is deemed equitable, under all the circumstances, that no party should recover costs in this court.