Argued September 12; affirmed November 13, 1940

# WILLIAMS ET AL. *v.* BARBEE ET AL.
## (106 P. (2d) 1033)

*Howard P. Arnest*, of Portland (George M. McBride, of Portland, on the brief), for appellants.

*Arthur A. Goldsmith*, of Portland (Paul L. Weiden, of Portland, on the brief), for respondents.

LUSK, J. The defendants assert that the court below erred in denying their motion to require plaintiffs to make the complaint more definite and certain by alleging the character of their title, whether legal or equitable.

The suit is authorized by § 6-1001, Oregon Code 1930, as amended by Ch. 107, Oregon Laws 1931, and Ch. 275, Oregon Laws 1937. So far as here material, the statute provides:

"Any person claiming an interest or estate in real property not in the actual possession of another may maintain a suit in equity against another who claims an interest or estate therein adverse to him, for the purpose of determining such conflicting or adverse claims, interests or estates."

The complaint is in the usual form in such cases. It describes the property; alleges that the plaintiffs are owners of and claim the entire interest in such property; that it is not in the actual possession of any one; that the defendants claim some estate or interest in the land, but that such claim is wrongful and without right; and demand is made that the defendants set forth their claim, right, title, interest or estate and submit the same to the determination of the court. These allegations are clearly sufficient. *Hanna v. Hope*, 86 Or. 303, 307, 168 P. 618; *Savage v. Savage*, 51 Or. 167, 170, 94 P. 182. Apparently, however, it is the defendants' contention that had the plaintiffs been required to set forth the nature of their title they would necessarily have stated that they relied on a legal title,

whereas the proof, it is said, disclosed only an equitable title, and thus a fatal variance between pleading and proof would have resulted. See *Mascall v. Murray*, 76 Or. 637, 646, 149 P. 517. We are of the opinion that no error requiring a reversal was committed in denying the motion to make definite and certain for two reasons: first, at the beginning of the trial counsel for plaintiffs stated to the court that they claimed legal title in fee simple and not an equitable title; and, second, there was no variance because, as will be later shown, the plaintiffs in fact established in themselves legal title to the lands.

■ It is further contended by the defendants that a plea in abatement, filed by the defendant, Spiess, should have been sustained by the trial court. The substance of this plea is that Spiess was in possession of the land under the contract at the time of the commencement of this suit. If this was so the court would have been without jurisdiction since the plaintiffs were relying on a legal title. *Oliver v. Burg*, 154 Or. 1, 20, 58 P. (2d) 245. We think, however, that the proofs clearly establish that the land was not in the actual possession of the defendant, Spiess, or of any one else, and, hence, that the court had jurisdiction to proceed.

■ It is the position of the defendants that in no event can the plaintiffs maintain a suit to quiet title because, in their view, the sole remedy of a vendor, under a contract of this character, in case of the purchaser's default, is by suit to foreclose the purchaser's equity in the land. They argue that this contract does more than confer upon the defendants a mere license to go upon the land and cut and remove timber, as in *Coquille Mill & Tug Co. v. Robert Dollar Co.*, 132 Or. 453, 285 P. 244, but rather that it is a contract for the purchase

and sale of the timber, a part of the real property, as in *Belt v. Matson*, 120 Or. 313, 252 P. 80, and *Hodges v. Mickle Lumber Co.*, 124 Or. 515, 264 P. 850. In this latter view we are inclined to concur, especially as the contract provides that when it has been fully performed the sellers will, at the option of the purchaser, convey the land and the remaining timber to the purchaser without further compensation. It is unnecessary, however, to decide that question.

Assuming that the case is governed by the principles applicable to contracts for the sale and purchase of land, the contention put forward must be rejected because it rests upon a misconception of those principles as announced and applied in the decisions of this court. By the terms of the contract the purchaser agreed to log at least 8,000,000 feet during the year 1938 and a further 8,000,000 feet during the year 1939, and the remainder of the timber during the year 1940. Time is expressly made of the essence of the agreement and it is stipulated that in event of the purchaser's default the sellers may, at their election, terminate the agreement by giving 30 days' written notice of such default, or, in the alternative, bring a suit in equity to foreclose the contract.

These are stipulations which the parties had the right to adopt, and if the intention to make time of the essence of the contract is unmistakably apparent, the contract will take effect according to its terms, and be binding in equity as well as at law. 1 Warvelle on Vendors, 130, § 98. Not only is the language used wholly free from ambiguity or uncertainty in this respect, but the fulfillment by the purchaser of his agreement to log 8,000,000 feet a year was a matter of importance to the plaintiffs, since it was the substantial

assurance of prompt payment of the purchase price agreed upon. True, the contract does not require payment to be made as the timber is cut and removed. It does, however, contemplate that the plaintiffs should receive the purchase price of $2.00 per thousand feet as logs were sold, and obviously logs could not be sold until the timber should be cut and removed. Numerous decisions in this state recognize the rule that where a covenant in a contract for the sale of land makes time of payment of the essence of the contract, and provides that upon failure of the vendee to comply therewith the contract shall become null and void or the vendor may terminate it, the vendor has the right, upon the vendee's default, to elect to terminate the contract or continue it in force. *Rynhart v. Welch*, 156 Or. 48, 53, 65 P. (2d) 1420; *Kemmerer v. Title and Trust Co.*, 90 Or. 137, 175 P. 865; *Gray v. Pelton*, 67 Or. 239, 135 P. 755; *Maffet v. Oregon and Cal. R. Co.*, 46 Or. 443, 80 P. 489; *Holland v. Bradley*, 140 Or. 258, 12 P. (2d) 1100, and cases cited in 140 Or. at pages 263 and 264. See the discussion of this subject in *Grider v. Turnbow*, 162 Or. 622, 94 P. (2d) 285. We think that the same doctrine is applicable to the covenants of the purchaser in the contract here under consideration.

■ There is no inconsistency between the holding of these cases and *Flanagan Estate v. Great Central Land Co.*, 45 Or. 335, 77 P. 485, cited by the defendants. There the vendor, instead of declaring a forfeiture as he had the right to do under the terms of the contract, brought a suit in equity for a strict foreclosure. He thereby waived the stipulation for forfeiture, which the opinion expressly recognizes he could have insisted upon at law, and the contract, instead of being terminated, remained in force, the vendee still retaining the right to

make payment and acquire title to the land. But where, as in this case, there is a valid agreement for forfeiture in a contract containing a time essence clause and the vendor has neither expressly nor by conduct waived the right to enforce such agreement, but acts under it and declares a forfeiture for breach of a condition of the contract, the result is to put an end to the contract and extinguish it in accordance to its terms similarly to the manner in which it is extinguished by performance. *Holland v. Bradley*, supra; *Kemmerer v. Title and Trust Co.*, supra; *Stennick v. J. K. Lumber Co.*, 85 Or. 444, 478, 161 P. 97, 166 P. 951; 13 C. J., Contracts, 608, § 642.

■ The language found in the forfeiture provision necessarily determines the right of forfeiture. *Kemmerer v. Title and Trust Co.*, supra. In this instance the vendors, on default of the purchaser, could exercise their option to terminate the contract by giving 30 days' notice in writing to the purchaser. The plaintiffs acted in literal compliance with this stipulation. The notice could not have been given until after the expiration of the year 1938, because, until then, there was no default; it was given promptly thereafter.

■ The defendants urge, however, that the 30 days' notice was of no value to them because it came in the middle of winter when logging operations were impossible and the default could not be cured. And they endeavor to import into the forfeiture provision of the contract the language elsewhere found that logging operations shall be continuous "unless interrupted by weather conditions, strikes or other unavoidable casualties", arguing that they were entitled to 30 days in which logging operations could be carried on. The obvious answer to this contention is that the parties

did not so agree, and the court cannot make for them a new contract. Besides, under a fair construction of the terms of this contract, the defendants could have cured the default by paying for 8,000,000 feet at the agreed price. They could also have exercised the option given them to have the timber cruised and pay for it in full according to the cruise.

■ The defendants contend that it would be inequitable to sanction the plaintiffs' course in declaring a forfeiture because, as their evidence tends to show, they were prevented from complying with their contract by circumstances over which they had no control. These are, in brief, that they found it impossible to haul logs over the public roads of Tillamook county because a number of bridges were out of repair and could not be used, and that market conditions were such that logs could not be sold at a reasonable price. But, however that may be, the obligation of the defendants to log 8,000,000 feet in the year 1938 was absolute. Weather conditions, strikes, or other unavoidable casualties would have excused failure to log continuously, but the provision in the contract as to these hazards does not modify any other covenant of the purchaser. Contingencies of the kind to which the defendants point could have been foreseen and guarded against in the contract,—as, indeed, to a limited extent they were— but, so far as the obligation to log 8,000,000 feet in the year 1938 is concerned, the purchaser did not choose to qualify his liability with reference to them, and the court is without power to do so. *Coquille Mill & Tug Co. v. Robert Dollar Co.*, supra; *Hanthorn v. Quinn*, 42 Or. 1, 13, 69 P. 817. As the two cases just cited hold, an adverse lumber market was no legal excuse for defendants' failure to perform.

■ It is fundamental that equity will not lend its aid to an attempt to enforce a forfeiture. *Flanagan Estate v. Great Central Land Co.*, supra. But that is not the purpose of this suit. The contract in the instant case was terminated pursuant to its provisions; and the forfeiture was an accomplished fact at the time that the suit was instituted.

The cases of *Oconto Co. v. Bacon*, 181 Wis. 538, 195 N. W. 412, 40 A. L. R. 175, and *Suburban Homes Co. v. North*, 50 Mont. 108, 145 P. 2, Ann. Cas. 1917C, 81, shed light on the nature and scope of the inquiry and the character of the relief to be granted in a suit of this kind, brought by a vendor against a purchaser under a state of facts comparable to that here presented. Both of these cases involved land contracts where the purchasers had defaulted and the vendors had exercised their options to declare the contract at an end and afterwards brought suits to quiet title. In the Wisconsin case it was contended, as it is here, that the plaintiff was seeking the aid of a court of equity to enforce a forfeiture. The court, after considering the respective rights of the vendor and purchaser under the ordinary form of land contract, and, after determining that no such showing had been made by the defendants as would entitle them to relief from the forfeiture, concluded as follows:

"So that under the facts in this case the defendants had at the time of the commencement of this action no right or interest in the premises, either legal or equitable. If when the forfeiture was declared the defendants had promptly offered to perform fully the contract, a different situation would have been presented. Equity has not enforced a forfeiture. It has failed to relieve against a forfeiture because no equitable grounds of relief from the forfeiture exist.

"The contract outstanding constituted a cloud upon the title, and to remove this plaintiff was clearly entitled to the aid of a court of equity on well-established principles."

In the Montana case the court first disposed of the contention that it was incumbent on the plaintiff to allege that it had restored or offered to restore to the defendant payments made under the contract, saying:

"The first contention made is that the court erred in overruling defendants' objection to the introduction of evidence. It is said that, since the apparent purpose of the action is to enforce a rescission of the contract, it was incumbent upon plaintiff to allege that it had restored, or offered to restore, to the defendant Austin North everything of value received from him in part performance of the contract, viz., payments made by him. This contention is based upon a misconception of the scope and purpose of the action. Rescission requires the party seeking to rescind to restore, or offer to restore, to the other party everything of value received by the former under the contract, upon condition that the latter will do likewise. (Rev. Codes, sec. 5063; *Clark v. American Dev. & Min. Co.*, 28 Mont. 468, 72 Pac. 978; *Cotter v. Butte & Ruby Valley S. Co.*, 31 Mont. 129, 77 Pac. 509.) If he seeks the aid of a court of equity, he must aver that he has done this, or set forth excusatory facts. Such is not the purpose of this action. Plaintiff seeks to have the contract canceled as a menace to his title, having asserted his right under the express stipulation therein to declare it no longer binding upon him because of a breach of it by the defendant. While both actions are of equitable cognizance, they are wholly different in their scope and purpose, and the rules applicable to the one have no application to the other. (*Cook-Reynolds Co. v. Chipman*, 47 Mont. 289, 133 Pac. 694; *Fratt v. Daniels-Jones Co.*, 47 Mont. 487, 133 Pac. 700.) In this sort of action the complaint need not contain any allegation on the subject of restoration."

The court next discussed the objection that the plaintiff was attempting to enforce a forfeiture, as follows:

"The same may be said of the contention that the purpose of the action is to enforce a forfeiture, and therefore cannot be sustained. Plaintiff does not ask that the court declare a forfeiture of the amounts paid by the defendant, nor does the decree adjudge the rights of the parties in this behalf. It merely declares that the plaintiff is entitled to be restored to its rights as they existed prior to the execution of the contract, and that the instrument—the only evidence of any right in defendant—be delivered up for cancellation, so that it may not hereafter be a source of embarrassment to the plaintiff, as a standing menace to its title. It leaves the question whether the defendant is entitled to recover his payments, or any part of them, wholly unadjudicated."

Notwithstanding that the defendants have not asked affirmatively in their pleadings to be relieved from the forfeiture and have not presented the matter in argument, we think that, since the plaintiffs are here invoking equitable relief, the question is properly before us for determination.

The defendants ignored the letter of the plaintiffs declaring a default until a day or two before the 30-day time limit expired. Then, the defendant Spiess, through his attorney, advised the plaintiffs that they had no right to declare a forfeiture—which was not the fact— and expressed an intention to resume logging operations and a hope of raising funds for an advance payment on stumpage. Nearly six months later, after the plaintiffs had placed another operator in possession of the property under a contract of sale, and, while this suit was pending, the defendant, Spiess, through his attorney, made an offer in writing to pay $15,000

as an advance payment on logs. The offer was described as a "compromise proposal". At the trial the offer was not renewed. The defendant, Spiess, testified that they were ready, able and willing to perform, but the facts which he and his co-defendant admitted tend to negative this claim. Spiess at that time was still indebted to Tillamook county in the sum of $1,000 for lumber used in repair of the bridges. While the defendants were operating under the contract charges accumulated which they were unable to pay, and creditors, as a result, filed liens against logs in the pond at Tillamook. Their tractor was mortgaged; the yarder and donkeys were the property of another. They had failed to pay the 1938 taxes on the land as the contract required. There is nothing to show that the defendants had $15,000 at the time of their offer of that sum, or anything more than a hope of obtaining it. On the contrary, the record affirmatively discloses that they were attempting to dispose of their contract to others. They would lay the blame on the plaintiffs for their failure thus to obtain financial aid, asserting that the pendency of this litigation is what forestalled them, but it was their own act in recording the contract which precipitated this suit.

In 2 Warvelle on Vendors, 964, § 822, it is said that a defaulting vendee may obtain relief when he tenders the whole of the purchase price or a full compliance with the obligations of the contract, and there are present some equitable considerations in excuse for his apparent negligence. The opinion of this court in *Rynhart v. Welch*, supra, recognizes this rule. Difficulties arise in determining what are the equitable circumstances which warrant the chancellor in exercising this power. See, *Gray v. Pelton*, supra; *Henry*

*v. Tupper*, 29 Vt. 358; 3 Story's Eq. Jur. (14th Ed.) 350, §§ 1733, et seq.; 1 Pomeroy Eq. Jur. (4th Ed.) 854, § 450. As the cited authorities indicate, a different rule applies where the forfeiture is for the nonpayment of money than where it is for the failure to perform some collateral duty, such, for example, as the duty to repair premises. In some circumstances the question seems to be largely discretionary with the court. Other considerations not necessary to be mentioned here sometimes affect the decision; but whatever may be the differences of judicial opinion as to these matters, it cannot be doubted that the relief is not available where there is ''any good ground to apprehend a recurrence of the failure to perform''. *Henry v. Tupper*, supra; *Rynhart v. Welch*, supra; 1 Pomeroy, id. 857, § 451; *Wheeling & E. G. R. Co. v. Triadelphia*, 58 W. Va. 487, 52 S. E. 499, 4 L. R. A. (N. S.) 321.

■ The heavy losses sustained by the defendants are regrettable, but they were not due to any fault of the plaintiffs, who did no more than act upon their legal rights in the face, not of a technical or trivial, but a very substantial breach by the defendants. By the contract the purchaser covenanted to remove all the timber by January 1, 1941. In view of the hazard of fire, this was an important provision to the plaintiffs (*Coquille Mill & Tug Co. v. Robert Dollar Co.*, supra), and the likelihood that the defendants would be able to carry it out becomes increasingly remote in view of their default in the first year.

In these circumstances, to compel the plaintiffs to gamble with the defendants' ability to recover their lost ground, pay what they owe, and carry out the contract according to its terms, not only would not be equity, but would be likely to create distrust in the

value and sanctity of written contracts, freely entered into by competent parties.

16. Finally, it is contended that plaintiffs waived their right to terminate the contract by accepting payments under it after the declaration of forfeiture. These payments were made by the firm of Anderson and Middleton of Grays Harbor, Washington, to whom certain logs were sold by the defendants. The contract contains a provision "that no logs may be taken outside the State of Oregon unless they have been paid for in full before leaving Tillamook, Oregon", but in this instance the stipulation was waived, and in December, 1938, Anderson and Middleton were permitted to move the logs to Grays Harbor on their agreement to pay the plaintiffs $2.00 per thousand feet and to satisfy certain liens that had been filed against the logs. Such payment to the plaintiffs was subsequently made— one-half in January, 1939, and the balance in March of the same year; and it is the defendants' position that the acceptance of these payments was an act inconsistent with the attempted termination of the contract, and a recognition of its continued existence.

It is a general rule that continued recognition of the contract by the vendor as still binding, after default, in respect of the provisions for payment is a waiver of the right to forfeit the contract on that ground, and acceptance of installments after the time fixed by the contract for payment operates as a waiver of the right to terminate the contract for such default. 66 C. J., Vendor and Purchaser, 782, § 383; *Gray v. Pelton*, supra. But, apart from the fact that forfeiture in this case was not declared for the defendants' failure to make the payments in question, we are of the opinion that the rule stated has no application here. The case

is wholly unlike that of the ordinary contract for the sale of land, such, for example, as in *Gray v. Pelton,* supra, where a vendor accepts overdue installments and then, without giving the vendee a reasonable notice to comply with his contract as to time of payment, attempts to enforce a forfeiture clause. In such a case the forfeiture extends to the very property and the whole of it for which the money is paid. Here, however, title to the logs in question passed to the purchaser, Anderson and Middleton, while the defendants, through the payment of the stipulated price of $2.00 per thousand feet to the plaintiffs and the discharge of the liens by that firm, received the full benefit of the proceeds of the sale. In respect of this property the contract was then fully executed by the plaintiffs, who, had they not been paid the purchase price, could have maintained an action against the defendants to recover it without waiving any of their other rights. It is analogous to the case of a lessor who may forfeit a lease for nonpayment of rent and still recover rents for past use of the property. See *Cirlot v. Stevens,* 222 Ala. 271, 132 So. 163.

■ It follows that, the plaintiffs having lawfully terminated the contract according to its terms, and thus divested the defendants of any interest they may have had in the land, and having proved legal title in themselves by documentary evidence, there is no merit in the contention that the plaintiffs established only an equitable title, and that, therefore, there was a variance in the proof. It also follows that in these circumstances the plaintiffs may rightfully maintain a suit to quiet title. *Coquille Mill & Tug Co. v. Robert Dollar Co.,* supra.

■ It does not necessarily follow, however, that the plaintiffs could lawfully retain the sum of $5,000, $1,000 of which was paid to them and $4,000 deposited in the First National Bank of Portland, Oregon, under an agreement that said sum of $5,000 should be in payment for the last 2,500,000 feet of the timber purchased. The purpose of this suit, as already stated, is to establish the title of the plaintiffs in the land, free from any claim of the defendants arising out of the contract, and a decision that the contract has been lawfully terminated and that the defendants are not entitled to be released from the forfeiture, is effective to accomplish that purpose, but nothing further. It is not an adjudication of the rights of the parties with respect to the initial payment of $5,000. *Suburban Homes Co. v. North*, supra.

As to the covenant for forfeiture of the logging equipment placed on the land by the defendants, there is no controversy, because the plaintiffs have not attempted to enforce it.

The decree of the circuit court is affirmed.

RAND, C. J., and KELLY, BELT and BAILEY, JJ., concur.

ROSSMAN and BEAN, JJ., not sitting.