Argued March 21, affirmed May 23, 1951

## NORTON ET UX. *v.* VAN VOORST ET UX.
### 231 P. 2d 947

*Thomas C. Hartfiel,* of Roseburg, argued the cause and filed a brief for appellants.

*Carl M. Felker,* of Roseburg, argued the cause for respondents. With him on the brief was Paul E. Geddes, of Roseburg.

Before BRAND, Chief Justice, and ROSSMAN, LUSK, LATOURETTE and WARNER, Justices.

## LATOURETTE, J.

This is a suit for specific performance of a contract for the sale of land brought by the assignees of the vendees against the vendors. The trial court decreed specific performance and the vendors appeal.

Following is a copy of the contract:

"THIS AGREEMENT, Made and entered into this 19th day of March, 1945, by and between S. W. Van Voorst and Emma Van Voorst, husband and wife, Parties of the First Part, and Frank Cecil Samson and Verda Rae Samson, husband and wife, Parties of the Second Part,

"WITNESSETH:

"That for and in consideration of the covenants and stipulations herein contained, and the payments to be made as hereinafter specified, the First

Parties hereby agree to sell to the Second Parties, and the Second Parties agree to purchase from the First Parties, the following described real property, to-wit:

"* * *

"In consideration wherefor, the Parties of the Second Part agree to pay the First Parties the sum of Three Thousand Eight Hundred Dollars ($3,800.00), to be paid as follows: The sum of Thirty Dollars ($30.00) on the execution of this agreement, the receipt whereof is hereby acknowledged, and the sum of Thirty Dollars ($30.00) on the 19th day of April, 1945, and on the 19th day of each and every month thereafter until said sum is fully paid.

"All deferred payments shall bear interest at the rate of five per cent (5%) per annum, and said installments so paid shall be credited, first, to the payment of the interest to date, and the balance credited upon the principal.

"The Parties of the Second Part, in consideration of the premises, further agree that they will regularly and seasonably pay all taxes and assessments which come due and payable during the life of this agreement.

"All improvements placed upon said premises shall remain and shall not be removed before final payment is made for said premises.

"The Parties of the Second Part, agree to keep the improvements on said premises insured in some reliable insurance company in the sum of $2500.00 Dollars, during the life of this agreement, with loss, if any, payable to the First Parties as their interests may appear.

"In case the Second Parties, their legal representatives or assigns, shall pay the several sums of money aforesaid punctually to First Parties, and shall strictly perform all and singular the agreements and stipulations aforesaid, according to the true intent and tenor thereof, then the First Parties

hereby covenant and agree to make unto Frank Cecil Samson and Verda Rae Samson, husband and wife, their heirs or assigns, a good and sufficient deed of conveyance, covering said premises and conveying them in fee simple, free and clear of all encumbrances, excepting, however, the above mentioned taxes and assessments, and all liens and encumbrances created by said Second Parties or their assigns.

"In the event the Parties of the Second Part shall make default for a period of thirty (30) days in the payments aforesaid, or any of them, or any part thereof, after the same becomes due as hereinbefore specified, the time of payment being declared to be the essence of this agreement, this agreement shall thereupon cease and terminate, and all the right and interest hereby created or then existing in favor of the Second Parties, or derived under this agreement, shall at once entirely cease and determine, and the premises aforesaid shall revert and revest in the Parties of the First Part without any other act by the Parties of the First Part to be performed, and without any right of the Second Parties of reclamation or compensation for moneys paid or for improvements made, as absolutely and fully as if this agreement had never been made, all such payments in such event being stipulated between the parties hereto as having been paid as rental and as damages for the nonperformance of this agreement by the Second Parties.

"IN WITNESS WHEREOF, The Parties have hereunto set their hands the day and year first above written.

"/s/ S. W. Van Voorst
"/s/ Emma Van Voorst
"Parties of the First Part.
"/s/ Frank Cecil Samson
"/s/ Verda Rae Samson
"Parties of the Second Part."

Coincident with the signing of the contract, the Samsons executed to Mr. Van Voorst a promissory note, a copy of which follows:

"$3,800.00          Roseburg, Oregon, March 19, 1945.

"For value received we promise to pay to the order of S. W. Van Voorst at Roseburg, Oregon, Three Thousand Eight Hundred _____ DOLLARS in lawful money of the United States of America, with interest thereon in like lawful money at the rate of 5 per cent. per annum from date until paid, payable in monthly installments of not less than $30.00 in any one payment, the full amount of interest due on this note at time of payment of each installment. The first payment to be made on the 19th day of April, 1945, and a like payment on the 19th day of each month thereafter, until the whole sum, principal and interest, has been paid; if any of said installments are not so paid, the whole sum of both principal and interest to become immediately due and collectible at the option of the holder of this note. In case suit or action is instituted to collect this note, or any portion thereof, we promise to pay such additional sum as the Court may adjudge reasonable as attorney's fees in said suit or action.

"/s/ Frank Cecil Samson
"/s/ Verda Rae Samson"

Upon the execution of the contract, the Samsons moved onto the property and made the down payment of $30.00 and punctually paid to the vendors $30.00 per month, including the June 19, 1946, payment, but failed to pay the taxes or take out insurance on the property.

On or before the July 19th due date, the Samsons tendered to the defendants a $30.00 installment payment which was rejected by defendants and returned to the vendees with the notation that the contract was no longer in effect.

On July 22, 1946, the vendees assigned their interest in the contract to plaintiffs in the following form:

"For the value received I hear by sell and assign all my rights titles and interests in the above said contract to Frank Joseph and Birdiena Hattie Norton husband and wife for the sum of $300.00

"Signed              "Signed
"Verda Rae Samson        "Frank Cecil Samson"

■ Vendors brought an F.E.D. action on the 29th day of July, 1946, in the justice court against the assignees to gain possession of the premises. Issue was joined, a trial was had, and the vendors prevailed. However, the assignees, in their answer to the F.E.D. action, set up the contract between the original parties and their assignment from the vendees and prayed that the complaint be dismissed. Since title to the real property was disputed, jurisdiction of the justice court was divested (see § 28-319, O.C.L.A.), and the justice court's disposition of the matter is not *res adjudicata.* Thereafter, and on the 14th day of October, 1946, the assignees brought the present suit.

On about the 25th day of July, 1946, the plaintiffs mailed to the defendants a fire insurance policy in the sum of $2,500.00, which defendants turned over to their attorney. On the 13th day of August, 1947, and after the instant case was brought, plaintiffs tendered to defendants the full amount of taxes due and owing on said property for the tax years 1945-1946 and 1946-1947, and the accruing taxes on the property to the end of the year 1944-1945, which tender was rejected by the defendants.

Plaintiffs tendered to the defendants and into court the full amount of the purchase price with interest remaining owing on the contract, together with all

unpaid taxes, and prayed for a decree ordering the defendants to execute a deed to them to the property in question.

It is the theory of the defendants (vendors) that the forfeiture clause of the contract was self-executing, and that upon the failure of the vendees to pay the taxes and take out an insurance policy as required by the contract, the contract *ipso facto* terminated, and that thenceforth, vendees were occupying the premises as tenants, and that the $30.00 monthly payments were rental payments and not installment payments under the contract.

■■ Turning to the contract, we find that the forfeiture clause specifically refers to the "payments aforesaid." It is a well-recognized rule that forfeiture clauses are for the benefit of the vendor and are liberally construed in favor of the vendee. "Payments," as employed, we believe, refers to the $30.00 installment payments and not to the obligation to pay taxes nor to the insuring of the improvements on the premises. "Payments" is used in only one other place in the contract, and that is in the following clause: "All deferred payments shall bear interest at the rate of five per cent (5%) per annum." Such payments referred back to the preceding paragraph in which vendees obligated themselves to pay $30.00 per month on the contract.

■■ As to the insurance clause of the contract, the vendees did not agree to pay anything, their obligation being only to keep the improvements on said premises insured. Concerning the payment of taxes, it is clear that the parties to the contract did not consider that a failure to pay taxes would effect a self-executing forfeiture because the contract contains a clause that the

vendors will execute to the vendees a deed to the premises, at the appropriate time, "free and clear of all encumbrances, excepting, however, the above mentioned taxes and assessments."

It will be observed that the time essence and forfeiture clause of the contract has reference only to the installment payments, the contract being silent on the rights of the vendors should the vendees fail to pay the taxes or take out the required insurance.

██ Since all installment payments were regularly made pursuant to the contract, there could be no forfeiture of the contract because of the failure of the vendees to pay taxes or to take out fire insurance without vendors first giving vendees reasonable notice of their intention to declare a forfeiture in order that vendees might have an opportunity to cure the breach. We have consistently held in a long line of decisions that where there is a breach of contract and such contract does not contain a self-executing forfeiture clause covering such breach, before a forfeiture may be declared by the vendor, reasonable notice must be given to the defaulting party of vendor's intention so to do. We do not mean to intimate, however, that a self-executing forfeiture clause in a contract in every instance eliminates the necessity of giving notice, for, under some circumstances, even where there is such a clause, notice is required to be given. See *Grider v. Turnbow,* 162 Or. 622, 640, 94 P. (2d) 285.

██ In this instant case, defendants proceeded to evict plaintiffs from the property in question without having given them any notice as the law required, and, for that reason, in spite of the contractual breach, the contract still had vitality, and plaintiffs having delivered to defendants the required insurance policy

and having tendered into court a sufficient amount of money and interest to cover all taxes which they and their predecessors in interest were obligated to pay under the contract, and having also tendered into court sufficient moneys to pay the entire purchase price remaining unpaid under the contract, are entitled to equitable relief.

The trial court entered a decree specifically enforcing the contract and ordered defendants to execute a deed to plaintiffs to the real property involved. It further directed the clerk of the court to pay to the defendants the sums of money, upon the delivery of the deed aforesaid, which had been tendered to them by the plaintiffs.

Defendants argue, however, that since the contract called for payments of $30.00 per month, but no more, all the court could legally do in any event would be to enforce the contract as written and would have no authority to declare the unpaid balance of the contract due and payable. It is stated in their brief that:

"The court ordered the appellants to accept the sum of $3,638.43 and to execute a deed to the respondents. * * *

"The vendors received $480 from the original vendees (the Samsons) and if the court could compel the execution of a deed by the vendors for the additional sum of $3,683.43 tendered into court, the premises would be deeded for the total sum of $4,118.43 principal and interest.

"The terms of the contract would have granted the vendors $5,379.22 principal and interest for the property.

"The court, by ignoring the terms of the written contract, brought the agreement to an end three years before the entry of its decree * * * and more than thirteen years before the respondents

could have complied with the provisions which would have entitled them to a deed. In addition, the court deprived the appellants of $1,260.79 to which they would have become legally entitled by reason of the terms of the agreement.''

It must be remembered that the Samsons at the time of signing the contract, collaterally executed the promissory note hereinbefore set out, which note defendants still hold. We must treat the execution of the contract and note as one transaction and construe them together as the contract of the parties. The note provides that the vendees had the option to pay ''monthly installments of not less than $30.00 in any one payment,'' so that the trial court properly matured the contract at the date of its decree. Affirmed.