Argued May 5, affirmed as modified June 29, 1966

PRINCE ET UX *v.* DIERKS ET UX,
THOMPSON ET AL
416 P. 2d 318

*Howard R. Lonergan,* Portland, argued the cause and submitted a brief for appellant Roland Barker.

*George P. Winslow,* Tillamook, argued the cause for appellants M. L. Schmidt and Beatrice Schmidt. On the briefs were Winslow & Winslow, Tillamook.

*Douglas E. Kaufman,* Tillamook, argued the cause for respondents. On the brief were McMinimee & Kaufman, Tillamook.

Before McAllister, Chief Justice, and Perry, Denecke, Schwab and Hammond, Justices.

SCHWAB, J. (Pro Tempore).

This is a suit for strict foreclosure of a contract for the purchase of a dairy farm. Plaintiffs sold to Mr. and Mrs. Dierks who in turn assigned to Mr. and Mrs. Thompson. The Thompsons assigned to Barker who took possession. Barker, as security for a loan of money, assigned to the defendants, Mr. and Mrs. Schmidt. The contract contained a provision forbidding assignments without written consent of the sellers. Plaintiffs contend that the assignment from the Thompsons to Barker and the subsequent assignment from Barker to the Schmidts was without their oral or written consent.

The court entered an interlocutory decree which purportedly was a decree of strict foreclosure as to all defendants, allowing a 15-day redemption period. The final decree of the court, which was entered 18

days later, provided that all the right, title and interest of all of the defendants to the real and personal property covered by the contract was strictly and finally foreclosed and granted judgment against the defendants Thompson and against the defendant Barker for $5,000 attorney's fees.

The defendants Schmidt make numerous assignments of error which resolve themselves into three categories:

(1) The court erred in overruling defendants Thompson and Schmidt's demurrer to plaintiffs' complaint.

(2) The court erred in granting plaintiffs' motion to strike portions of defendants Schmidt's second amended answer.

(3) The court erred in striking all of defendants' answers.

On appeal the defendants Thompson join with defendants Schmidt in their first assignment of error. Defendant Barker appeals solely on the grounds that the provision of the contract providing for an award of reasonable attorney's fees in the event of a default was not applicable to him.

■ We turn to the first assignment of error, the overruling of the demurrer. Defendants Schmidt argue that the demurrer to the complaint should have been sustained because the complaint did not state grounds for strict foreclosure. The defendants Thompson did not file a separate brief, filing only a statement that they joined with the defendants Schmidt in their assignments of error and supporting arguments relative to the demurrer.

We need not consider whether the defendants

Schmidt have any standing to raise this assignment of error, for defendants Thompson do have such standing.

■ At the time of trial plaintiffs filed a supplemental complaint alleging default in payment of taxes and principal and interest occurring between the filing of the first complaint and the filing of the supplemental complaint. The original complaint did not contain such allegations. The defendants Thompson and Schmidt argue that a supplemental complaint cannot be used to remedy the deficiencies of a complaint. We do not reach this question because we find that the original complaint did state a cause of suit for strict foreclosure.

The contract was for the purchase of real and personal property comprising an operating dairy farm. The complaint alleged numerous defaults by the vendees consisting of breach of covenants relating to repairs, painting, maintenance and operation of the dairy farm and covenants dealing with the maintenance at certain minimum levels of the inventory of cattle and equipment. The contract provided that time was of the essence and further provided, "but if the purchasers shall fail to make the payments *or to perform any other condition or undertaking* by them to be performed by the terms of this agreement, * * * the vendors may elect to declare this agreement ended and repossess * * * and all sums paid by the purchasers * * * shall be retained by the vendors * * *." (Emphasis supplied.)

Defendants argue that a vendor may not maintain a suit to strictly foreclose a contract except for failure of the vendees to make payments as required by the contract, citing *Conners v. Winans,* 122 Misc 824, 204

NYS 142, 146 (1924). In the *Conners* case the court said:

> "* * * Equity dislikes forfeitures, and it is for this reason and for the further reason that where there is an adequate remedy at law that equity will not decree foreclosure for the breach of an independent covenant."

While there are no Oregon cases considering whether strict foreclosure can be decreed in the absence of default in the payment of principal or interest or taxes, there is language in several cases indicating that there is no valid distinction between failure to pay interest, insurance or taxes as called for by the contract and the failure to comply with any other covenant materially affecting the security of the vendor.

In *Williams v. Barbee,* 165 Or 260, 106 P2d 1033, a vendor brought suit to quiet title to timber lands. The vendee had agreed to log eight million feet during each of the first two years of the contract and failed to do so. Time was made the essence of the agreement, which stipulated that in event of a default by the purchaser the sellers could terminate the agreement. This court, speaking through Mr. Justice LUSK, stated:

> "These are stipulations which the parties had the right to adopt, and if the intention to make time of the essence of the contract is unmistakably apparent, the contract will take effect according to its terms, and be binding in equity as well as at law. * * * Not only is the language used wholly free from ambiguity or uncertainty in this respect, but the fulfillment by the purchaser of his agreement to log 8,000,000 feet a year was a matter of importance to the plaintiffs, since it was the substantial assurance of prompt payment of the purchase price agreed upon." 165 Or at 272-73.

The situation in *Williams v. Barbee* is distinguishable from the case at bar in that the purchase price was to be paid as the timber was sold so that failure to cut resulted in late payments. Nevertheless, the opinion points out that the parties have the right to contract as they see fit and having bound themselves to material covenants free from ambiguity or uncertainty, those covenants will be binding in equity as well as in law.

■ Here the complaint alleged that the contract purchasers, by violation of material covenants dealing with maintenance, repairs, operation and inventory, were destroying the vendors' security. It stated a cause of suit and it was for the trial judge upon hearing and weighing the evidence to determine whether there was a breach justifying strict foreclosure.

■ The next issue raised by the defendants Schmidt charges the court with error in striking portions of their second amended answer. The portions stricken fall into two general categories; (1) allegations of fraudulent conspiracy on the part of plaintiffs and the defendant Barker, and (2) allegations charging that the plaintiffs did not come into a court of equity with clean hands.

The defendants Schmidt's second amended answer was a 13-page document containing a general denial and eight affirmative defenses. The sixth separate answer and defense began, "Defendants are informed and believe and based upon information and belief, now allege that plaintiffs and defendant * * *." The answer then goes on to allege fraudulent conspiracy. This method of pleading falls within the proscription of *North v. Union Savings & Loan Assn.*, 59 Or 483, 492-93, 117 P 822, where the court stated:

"As a general rule, it is not sufficient to charge

a fraud upon information and belief without giving the ground upon which the belief rests or stating some fact from which the court can infer that the belief is well founded. Further, our code requires a plain statement of the facts constituting the cause of suit, and these facts should be stated positively. The verification is to the effect that the plaintiff verily believes the complaint to be true. When a party alleges in his complaint that he believes a certain fact to be true, and in his verification swears that he believes his complaint to be true, the effect of the whole is that he has sworn that he believes that the allegation is the truth, which is an absuridity. A charge for perjury could not be predicated upon a verification of this character if false. 'An allegation of fraud made upon the information and belief cannot be sustained unless the facts upon which the belief is founded are stated in the pleading.' 10 Encyc. Pl. & Pr. 855, and cases there cited. This is a mere fishing allegation and should be disregarded." 59 Or at 492-493.

The court properly struck this defense—it alleged no facts in support of the allegation of information and belief.

■■ The remainder of the stricken material consisted of allegations designed to show that the plaintiffs did not come into court with clean hands. This court has declared that the "clean hands" maxim is not strictly a matter of defense, but is invoked on the grounds of public policy and for the protection of the integrity of the court. *Taylor et ux v. Grant et al,* 204 Or 10, 279 P2d 479, 1037, 281 P2d 704. In *Dickerson v. Murfield,* 173 Or 662, 147 P2d 194 we held that since one must do equity as a condition to obtaining relief, the defendant in an equity case need not plead plaintiff's failure to do equity in order to present evidence of plaintiff's lack of "clean hands." In *Hubbard v.*

*Olsen-Roe Transfer Co.*, 110 Or 618, ·224 P 636 we held that matters specially pleaded should be stricken as redundant if admissible under a general denial. It follows that while it is not necessarily reversible error to fail to strike such material, no prejudice can result from the order striking.

■ We next consider the charge that the trial court exceeded its powers in striking all of the defendants Schmidt's answers and in entering an order of default against them. The plaintiffs, with leave of court, filed a supplemental complaint. Next, the demurrer to the plaintiffs' complaint and supplemental complaint was overruled. Then the Schmidts filed an answer to the complaint and supplemental complaint which they denominated as a "SECOND AMENDED ANSWER * * *." The motion against the second answer was in 36 separate parts, 19 of which were allowed by the trial court. The order of the trial court entered on December 14, 1964, provided:

> "The defendants M. L. Schmidt and Beatrice Schmidt, his wife, are hereby ordered to file an amended pleading complying with the foregoing provisions of this order within ten (10) days hereof, and in the event that said defendants do not so replead within the time allowed by this order, said defendants' entire answer will be stricken from the files and records of this case."

On December 28, 1964, the Schmidts filed a "THIRD AMENDED ANSWER." The opening paragraph of the third amended answer contained reference to the ruling of the court as to the second amended answer and also contained the following:

> "Defendants for a sixth further and separate answer and defense allege:
> "(Paragraphs I to XI inclusive stricken)
> "* * * * *

"Answering defendants for an eighth further and separate defense allege:

"(All stricken)"

At a hearing discussing motions against the third amended answer on January 18, 1965, Judge Musick stated:

"Now, Mr. Winslow, this next time, I simply say this to you, the Court is tired of having these matters inserted in these Complaints that don't belong there. Now you've had notice of it and this is the last time that the Court is going to warn you against inserting in these records anything pertaining to these separate defenses which the Court ordered stricken.

"* * * * *

"* * * In view of the fact that this matter has been raised on these motions, I am going to *require* that the defendant Schmidt file his Answer within seven days from the date of the Order." (Emphasis supplied.)

In a hearing conducted on February 8, 1965, to rule on plaintiffs' motion to strike defendants' entire amended answer and counterclaim, Judge Musick summarized the actions of the defendants as follows:

"* * * Now this Court, by Order dated December 14th, 1964, ordered that the defendant Schmidt file an Amended Answer in this matter, deleting and striking the Sixth, Seventh and Eighth Separate Answer and Defenses from the Second Amended Answer filed by Schmidt, and directed that that Amended Answer be filed within ten days, complying with the Order of this Court.

"Now then, despite this Order of the Court, defendant Schmidt filed a Third Amended Answer containing references to the Sixth, Seventh and Eighth Separate Answers and Defenses which had been previously stricken from the Second Amended

Answer, thereby attempting to incorporate the same indirectly in the pleadings despite the Court Order to the contrary. This made necessary another hearing, which was held on the 18th day of January, 1965. The Court at that time was concerned that the defendant Schmidt may have been possibly confused and, in order to be fair, requested that he file another pleading in the case, the same to be filed within seven days. Now the defendant Schmidt has wholly failed to file within the seven days of the Order.

"An Order was entered on the 19th day of January, 1965. It was entered in the court records on the 21st day of January, 1965, and the defendant Schmidt has wholly failed and neglected to comply with this Order, and has ignored the same.

"Now if the defendant is requesting that this Court do equity, he must do equity, and his continued violation of the Order of this Court can lead the Court only to believe that such violation is done for the purpose of delay, and the matter for delay may cause irreparable damage. And for those reasons this Court is granting the motion to strike the whole of defendant Schmidt's Answer and Defense in this case, and that an order of default may be entered accordingly.

"I so rule."

The statute authorizing the Judge's actions, ORS 16.400 (2) provides:

"(2) In all cases where part of a pleading is ordered stricken, the court, in its discretion, may require that an amended pleading be filed omitting the matter ordered stricken. By complying with the court's order, the party filing such amended pleading shall not be deemed thereby to have waived the right to challenge the correctness of the court's ruling upon the motion to strike, and such ruling shall be subject to review on appeal from final judgment in the cause."

■ Defendants Schmidt, without citing any authority, argue:

> "The statutory provision, ORS 16.400, for the filing of an amended pleading, eliminating allegations stricken, does not apply when the trial is before the court."

This is not a correct statement of the law. The statute does not differentiate between jury and non-jury proceedings. There is no valid reason why court and counsel are not just as entitled to an understandable pleading as is a jury.

■ Defendants Schmidt argue that even if the court properly struck the third amended answer, it had no power to enter an order of default. The second amended answer was in actuality the only document filed in answer to the complaint and supplemental complaint. It was properly stricken. It follows that if the order of the court striking the third amended answer was proper, the Schmidts, by failing to plead further, were in the position of offering no defense to plaintiffs' contentions.

> "Failure to plead to a supplemental complaint warrants a judgment by default." 3 Bancroft, Code Practice and Remedies § 1795, p. 2358.

In *Mack v. Hendricks,* 126 Or 400, 270 P 476, the defendant filed an amended answer which included the same averments contained in the stricken answer. The second answer was stricken from the file on motion of the plaintiff as being in violation of the order of the court and a decree was then entered against the defendant. The language we used in affirming the trial court in that case has equal application in the case at bar.

> "* * * Striking the same from the files as

frivolous was in consonance with the orderly administration of justice. * * * After the amended answer was stricken from the files, there was no further pleading interposed on the part of the defendant and the decree was properly rendered on motion of plaintiff, as for want of answer * * *." 126 Or at 403.

We need not consider whether the allegations under the sixth and eighth affirmative defenses of the third amended answer were, in effect, a repleading of matter previously ordered stricken. Even if this is technically not the case, the allegations should have been stricken as frivolous, if not as impertinent.

The trial court displayed great patience in giving the Schmidts an opportunity to comply with its orders. If the court had been wrong on its rulings on the motions, the last sentence of ORS 16.400 (2) adequately protected Schmidts' rights to appeal from those rulings at the proper stage of the proceedings. By disobeying the court's orders they chose—perhaps for want of a better defense—to risk all on their position that the trial court's rulings on the motions against the pleadings were incorrect. The court's rulings were proper, consequently the order of default and decree entered pursuant thereto must stand.

With regard to the appeal of the defendant Barker, he is correct in his contention that the court erred in assessing attorney's fees against him. The only basis for the award of attorney's fees was the contract provision that the purchasers would pay to the vendors reasonable attorney's fees incurred by the vendors in enforcing any of the covenants of the contract.

Plaintiffs alleged that the contract was breached when the vendees' interest was assigned to Barker without vendors' consent being first obtained

in accordance with contractual provisions. The prayer of the complaint did not ask for strict foreclosure against Barker, but asked that he be barred from asserting any rights under the contract. A suit for strict foreclosure is a suit to enforce a contractual obligation. *Atkochunas v. Gustafson,* 156 Or 126, 66 P2d 1192. The plaintiffs cannot enforce the provision of a contract against a defendant not privy to the contract. Since this was not a suit to enforce the contract as against the defendant Barker, there is no legal basis on which to require him to pay attorney's fees.

Except as to the provision awarding attorney's fees against defendant Barker, the decree is affirmed in all respects.

Affirmed as modified.