Argued October 10, affirmed November 24, 1972

ROTH DEVELOPMENT, INC., *Appellant, v.*
A. R. JOHN GENERAL CONTRACTORS,
INC. ET AL, *Respondents.*

503 P2d 493

562

*Lloyd B. Ericsson,* Portland, argued the cause for appellant.

*Donald H. Joyce,* Portland, argued the cause and filed the brief for respondent A. R. John General Contractors, Inc.

TONGUE, J.

This is a suit to quiet title in which plaintiff claims ownership of the interest of one defendant under a contract by which that defendant was the purchaser of real estate from the other defendants. The trial court entered a decree dismissing plaintiff's complaint with prejudice. Plaintiff appeals. We affirm.

In 1967 defendant A. R. John General Contractors, Inc. ("John") paid defendants J. E. Tapp and Bessie Tapp ("Tapp") $500 for an option to purchase 118 acres of land in Washington County for $125,000. Before that option expired plaintiff made

a contract with John for development of the Tapp property as a residential airport complex. By the terms of that contract plaintiff agreed to purchase from John 24 acres of that property, to include a runway, as well as other lots, for $36,000, with a down payment of $11,500. That down payment, in turn, provided John with most of the funds required by John to exercise the option and make the down payment of $12,000 as provided by his purchase contract with Tapp.

Subsequently, plaintiff also paid $24,605 as the balance due for purchase of the 24 acres. That payment was made by plaintiff directly to Tapp and plaintiff received a deed to that property.

The land sale contract between Tapp and John required John to pay annual installments of not less than $7,533.33, with interest in addition to the minimum annual payments, but with the privilege of additional prepayments. That contract also included a forfeiture provision, with a time-essence clause, to become operative if John remained in default in its annual payments for a period of 10 days after written notice of such default.

As a protection to plaintiff's interest that the entire 118 acre tract be developed in accordance with deed restrictions as provided in its contract with John, that contract also included the following "option-assignment" provision, in the event of a default by John in its contract with Tapp:

> "In consideration of the mutual promises herein contained, A. R. JOHN grants to ROTH an option to assume A. R. JOHN'S purchaser's interest in the land retained by A. R. JOHN which is subject to the land sale contract from J. E. TAPP and BESSIE TAPP in the event A. R. JOHN de-

faults in making the payments required by the terms of that contract. ROTH may notify TAPP of this option to the end that the ten day notice of default which the land sale contract requires TAPP to give to A. R. JOHN in the event of default shall also be given to ROTH. In the event such default occurs, and ROTH cures such default, it is agreed that such occurrences shall operate as an assignment to ROTH of A. R. JOHN'S then remaining interest as purchaser under the land sale contract, without further payment or obligation on the part of ROTH. Provided, however, that the option granted by this paragraph shall not apply to any portion of the land under the TAPP-A. R. JOHN contract as to which A. R. JOHN as secured deed releases from TAPP."

In 1968 and 1969 payments totaling $34,468.45 were made by John to Tapp (not including the $24,605 paid by plaintiff) and John received deed releases from Tapp to 23.588 acres as a result of such payments, as provided for in the Tapp-John contract. The 1970 payment in the amount of $10,751.18 (including $7,533.33 in principal and $3,217.85 in interest) was due from John to Tapp on December 27, 1970 and was not paid on that date. On December 29, 1970 Tapp sent a notice to John that the default must be cured within 10 days. A copy of that letter was sent to plaintiff.

On December 30, 1970 John sent Tapp a check for $2,217.85, claiming that to be the amount due as interest and that no principal payment was due in 1970, apparently by reason of the manner in which previous payments had been made and treated. Tapp then replied by letter to John disputing that contention and stating that John was "still in default," but that he was "holding the check without accepting or rejecting it until such time as our differences are resolved."

On January 8, 1971, the tenth day after the notice of default, and without prior notice to John of its intention to do so, plaintiff delivered to Tapp its check for the full amount of $10,751.18.

On January 22, 1971 John delivered to Tapp a check for $7,533.33, representing the principal payment due on December 27, 1970. All of such checks were held by Tapp, awaiting instructions from the court as to which to accept. Subsequently, and prior to trial, John also delivered to Tapp a check for the balance due on interest.

Under these facts the trial court held that although John was in default and had no right to place plaintiff's investment in the property in jeopardy, to adopt plaintiff's position would result in a forfeiture of John's rights and equity under its contract with Tapp; that "the present suit is in actuality a suit for strict foreclosure," and that since John had by then paid the amount due under its contract with Tapp the plaintiff was not entitled to strict foreclosure of its contract with John.

Plaintiff contends on this appeal that the trial court erred (1) in holding that the "option and assignment" provisions in its contract with Roth should be "construed as though they were provisions for strict foreclosure in a contract between buyer and seller"; (2) in holding that plaintiff "sought the aid of the court in declaring a forfeiture because (a) plaintiff sought only a declaration that events had operated to satisfy the option and assignment provisions and (b) no forfeiture was involved"; and (3) "in relieving John from its default when the consequences of the default were contracted by the parties in arms-length bargaining, no inequity was present and defendant

John failed to seek such relief and showed no facts which would warrant it."

This is a case in which the right of a party to a contract to enforce its provisions, as agreed upon, conflicts with the long-standing abhorance by courts of equity toward the enforcement of contract provisions which result in forfeitures.

As recognized by the trial judge, however, in *County of Lincoln v Fischer et al*, 216 Or 421, 433, 339 P2d 1084 (1959), this court in considering this problem, quoted with approval from another authority as follows:

" '* * * Although the law will not assist in the vivesection of the victim, it will often permit the creditor to keep his pound of flesh if he can carve it for himself.' "

As we analyze the facts of this case, in order to resolve this problem, as applied to such facts, we must consider the following questions:

(1) Is the so-called "option-assignment" provision of plaintiff's contract with John a contract provision for a forfeiture?

(2) If so, is that provision self-executing, so as to result in an accomplished forfeiture without need of aid by the court for its enforcement?

(3) If not self-executing, was John given such notice of plaintiff's election to declare the forfeiture, so as also to result in an accomplished forfeiture without need of aid by the court for its enforcement?

(4) If such notice was not given, was plaintiff entitled to a decree enforcing the "option-assignment" provision of its contract with John in view of John's

subsequent payment to Tapp of the delinquent payment in full?

1. *The "option-assignment" provision of plaintiff's contract with Tapp was a provision for a forfeiture.*

Plaintiff contends that this court has recognized that parties have the right to contract as they see fit; that an assignment of property is valid although that property may be incapable of recovery without litigation, and that plaintiff "only sought a declaration that events had operated to satisfy the option and assignment provisions" of its contract with John by "automatic assignment," and that "no forfeiture was involved."

■ It is a well-recognized rule that because the forfeiture of rights under contracts is not favored, contract provisions which may result in forfeitures are to be construed liberally in favor of the party against whom such a forfeiture may be claimed. Cf. *Norton et ux v. Van Voorst et ux*, 191 Or 577, 584, 231 P2d 947 (1951).

In *Stennick v. J. K. Lumber Co.*, 85 Or 444, 476, 161 P 97, 166 P 951 (1916), this court recognized that the term "forfeiture" is broader than the term "penalty" and "may include not only the payment of a sum of money but the loss of property or of some right in it by reason of failure or neglect of a party to perform a contract." The court went on to state (at 477) (quoting from another authority) that "[f]orfeiture assumes a pre-existing valid contract or obligation."

■ Applying these standards to the facts of this case, we conclude that the "option-assignment" provision of plaintiff's contract with John was a contract provision for a forfeiture. It may be that in the usual

case of a forfeiture one party to a contract loses his rights under the contract to the other party to that same contract as a result of some failure of performance by the first party, as in the case of the forfeiture to the vendor of the rights of a purchaser under a contract for the sale of land. Nevertheless, under the contract provision in this case, John would lose its rights as a purchaser under its contract with Tapp upon the exercise by plaintiff of the rights conferred upon him under the "option-assignment" provision of its contract with John, and the fact that such rights are lost by John to plaintiff, rather than to Tapp, is immaterial insofar as the loss or forfeiture of John's contract rights are concerned.

We have examined the cases cited by plaintiff in support of its contentions to the contrary and find that none of them are directly in point.[①]

2. *The "option-assignment" provision was not self-executing so as to result in an accomplished forfeiture without need of aid by the court for its enforcement.*

■ Consistent with the view that although a court of equity will not enforce a forfeiture, it may permit a creditor to "keep his pound of flesh if he can carve it for himself," it is generally held that a forfeiture pro-

---

[①] Plaintiff cites Rorvik v. North Pac. Lumber Co., 99 Or 58, 91, 190 P 331, 195 P 163, 167 (1921); Killam v. Tenney, 229 Or 134, 149, 366 P2d 739 (1961); Prince v. Dierks, 244 Or 145, 416 P2d 318 (1966); and Williams v. Barbee, 165 Or 260, 106 P2d 1033 (1940).

*Rorvik* involved the assignability of a tort claim for personal injuries and did not involve any question of forfeiture. *Killam* involved the enforcement of an option agreement, but no question of forfeiture was involved. *Prince* was a suit for strict foreclosure, rather than suit to quiet title, as in this case. *Williams* is discussed later in some detail.

vision which is self-executing will be recognized by the courts. *Kemmerer v. Title & Trust Co.*, 90 Or 137, 143, 175 P 865 (1918). See also *Grider v. Turnbow*, 162 Or 622, 640, 94 P2d 285 (1939), and *Edwards v. Wirtz*, 167 Or 625, 633, 118 P2d 114 (1941).

Plaintiff contends, in effect, that if the "option-assignment" provision of its contract with John be construed as a contract provision for a forfeiture, it was one which resulted in an "automatic assignment to plaintiff of defendant John's remaining interest in the Tapp-John contract."

■ A contract provision for a forfeiture may, however, do no more than confer an option upon one party to the contract, with the result that upon failure of payment or other performance by the other party the contract provision does not of itself work a forfeiture, but there must be a declaration of a forfeiture or some equivalent act or conduct. *Kemmerer v. Title & Trust Co., supra* at 144, and cases cited therein. See also *Grider v. Turnbow, supra* at 640, and *Edwards v. Wirtz, supra* at 633.

■ Again, a contract provision for a forfeiture will not be construed as self-executing unless unequivocal language is used showing plainly and clearly that such was the intention of the parties. *Kemmerer v. Title & Trust Co., supra* at 144.

■ Under the terms of the "option-assignment" provision of this contract, a default by John in a payment due under its contract with Tapp would not of itself result in an assignment of such rights to plaintiff in the absence of plaintiff's election to pay to Tapp the payment which John had failed to make. Indeed, plaintiff appears to recognize this by the statement

that "when plaintiff cured defendant John's default, *this* operated not only to exercise the option but also to effect an assignment of the Tapp-John contract." (Emphasis added)

It follows, in our opinion, that this "option-assignment" provision was not self-executing.

3. *There being no self-executing contract provision for a forfeiture, plaintiff was required to give notice to John of his election to enforce the forfeiture.*

■ As stated by this court in *Grider v. Turnbow, supra* at 640, quoting with approval from *Epplett v. Empire Inv. Co., Inc.,* 99 Or 533, 541-42, 194 P 461, 700 (1921):

    " 'Since contracts like the one here are not self-executing, the law by implication introduces into such contracts a provision that the right of forfeiture should be exercised only after first giving notice for a reasonable period of time, or rather, speaking figuratively, the invisible and omnipresent hand of the law writes such a provision into the contract; and, therefore, the right to forfeiture can not be fully exercised unless: (1) the vendor gives reasonable notice; and (2) the purchaser fails to pay within the time fixed by the notice.' "

To the same effect, see *Howard v. Jackson,* 213 Or 447, 460, 324 P2d 757 (1958).

Plaintiff contends, however, that "[i]n the present case, A. R. John was notified that Tapps intended to enforce their contract rights (which included the right to declare a forfeiture of A. R. John's interest and, derivatively, Roth's interest as well) * * * The crux of this case lies in the facts that A. R. John de-

faulted in its payment, Tapps sent a 10-day letter and Roth cured the default on the last permissible day * * *."

This contention raises the question whether the notice requirement, as stated in *Grider v. Turnbow, supra,* was satisfied in this case by the notice of default given to John by Tapp, in the absence of notice by plaintiff to John of its intent to make the payment then in default.

First of all, it will be noted that the rule, as stated in *Grider,* requires that " 'the vendor give reasonable notice' " in order for the vendor to claim a forfeiture. In that case no third party was involved, as in this case.

We hold, however, that whatever may be the application of this rule under other facts, the facts of this case are such as to require that John be given notice by plaintiff of plaintiff's election to pay the payment then in default and claim the assignment of John's interest as a purchaser under its contract with Tapp.

John apparently was willing to take his chances with Tapp in working out with Tapp the question whether, in view of previous payments of principal, any principal payment was required in 1970. Indeed, Tapp gave some credence to that idea by writing to John to the effect that while Tapp considered John to be in default, Tapp was nevertheless retaining John's check for interest "until such time as our differences are resolved."

On the other hand, had John known that plaintiff would come in and, by making this disputed payment in full, claim an assignment of John's entire re-

maining interest in its contract with Tapp, it is quite possible that John would have abandoned its dispute with Tapp over the amount of the payment due and would have made the payment in full, although under protest, so as to protect itself against the claim of an assignment by plaintiff.

■ Despite the fact that there was no evidence that John would or might have done so, as matters actually developed, we hold that this possibility was so inherent in the situation presented by this "option-assignment" provision to compel the conclusion that John was entitled to notice directly from plaintiff of plaintiff's intent to pay to Tapp the payment in default and thereby claim an assignment of John's interest under the John-Tapp contract. We also believe this conclusion is consistent with the reasons for the rule requiring notice as a condition of a claim of forfeiture when a contract provision for forfeiture is not self-executing.

In some cases it has been held that no notice of forfeiture is necessary when it has been shown to do so would have been "a mere idle ceremony." *Title & Trust Co. v. Durkheimer Co.*, 155 Or 427, 442, 63 P2d 909, 64 P2d 834 (1937). No such showing was made in this case.

4. *In the absence of notice of forfeiture by plaintiff to John, plaintiff is not entitled to the aid of a court of equity to enforce the forfeiture.*

In *County of Lincoln v. Fischer et al*, 216 Or 421, 339 P2d 1084 (1959), as in this case, a suit to quiet title was filed requesting the court to recognize the declaration of a forfeiture without prior notice to the purchaser of land who had defaulted in

payments due under a contract. This court held (at 431-433) that because no prior notice had been given to the purchaser, so as to result in a completed forfeiture without need for aid by a court of equity to enforce the forfeiture, the effect of such a suit was to ask a court of equity to enforce a forfeiture and that such a suit might be considered to be a request for strict foreclosure. We also held in *Fischer* (at 433) that a suit for strict foreclosure is always addressed to the sound discretion of the court and that strict foreclosure for default in payments due under a contract will not be granted without giving the defendant a reasonable time to comply with the contract.

■ That case did not involve an "option-assignment" clause in a contract between the purchaser of land and a third party, as in this case. Having held, however, that this contract clause was a provision for forfeiture and was not self-executing, with the result that notice was required, and having held that the proper notice was not given, we also hold that the same basic reasons for the rule of *Fischer* are also present in this case.

■ It must be remembered, as stated in *Howard v. Jackson,* 213 Or 447, 459-60, 324 P2d 757 (1958), that equity will never declare a forfeiture and that there are, in fact, no exceptions to that rule. See also *Johnston v. Gilbert,* 234 Or 350, 352, 382 P2d 87 (1963).

■ Accordingly, we hold that this suit must be considered to be a suit to enforce a forfeiture. In addition, defendant had paid all delinquent payments by the time of trial. Accordingly, we hold that plaintiff's complaint must be dismissed.⑨

---

⑨ In suit by a vendor for strict foreclosure after default by the purchaser in payments due under a land sale contract, the

In support of its contention to the contrary, plaintiff relies heavily upon *Williams v. Barbee,* 165 Or 260, 106 P2d 1033 (1940), also a suit to quiet title after a default in payments due under the terms of a land sale contract. In that case, however, as pointed out in *Fischer* (at 434), the vendor "had given the notice required by the contract and therefore had effectively canceled it before the suit to quiet title was brought." (See also *Williams* at 274 and 276.) In *Fischer,* however, and in this case, no such notice was given. *Rayburn et ux v. Crawford et ux,* 187 Or 386, 211 P2d 483 (1949), also relied upon by plaintiff, is not in point for similar reasons. (See 187 Or at 391 and 399.)

Finally, plaintiff contends that "[t]he trial court erred in relieving John from its default when * * * no inequity was present and defendant John failed to seek such relief and showed no facts which would warrant it."

It appears from the record, however, apparently without objection by plaintiff, that John had paid the full amount of the delinquent payment, both principal and interest, by the time of the trial of this case. It follows, by application of the rule of *Fischer,* that the complaint in this case must be dismissed without need for further showing by defendant John.

Furthermore, even if this were a case such as *Williams v. Barbee, supra,* in which proper notice had been given so as to complete the forfeiture prior to the filing of the suit in equity, it was recognized (at 276

purchaser may be required to pay the entire balance due under the contract, depending upon its terms. In this case, however, no such contention was made either by defendant Tapp, the vendor, or by plaintiff.

and 278) that a different rule applies when the defendant in such a case promptly offers to perform, particularly when the forfeiture is for the nonpayment of money, as in this case. We also held in *Barbee* (at 278), even under the circumstances of that case, that:

"Notwithstanding that the defendants have not asked affirmatively in their pleadings to be relieved from the forfeiture and have not presented the matter in argument, we think that, since the plaintiffs are here invoking equitable relief, the question is properly before us for determination."

It may be that the interest of John under its contract with Tapp was somewhat different than the interest of the usual purchaser under the usual land sale contract. Nevertheless, and for all of these reasons, we agree with the trial court in holding that under the facts of this case and because the delinquent payment had been paid by the time of trial, plaintiff's complaint must be dismissed.

We therefore affirm the decree of the trial court, with costs to neither party.

McAllister, J., concurs in the result.